# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| KENNETH ANDERSON; BETTY ANDERSON, | ) ) ) | Case No.: 2:10-cv-1279-GMN-PAL |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) | |
| PACIFICARE OF NEVADA, INC.; UNITED HEALTHCARE SERVICES, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

Before the Court is Defendants PacifiCare of Nevada, Inc. ("PacifiCare") and United HealthCare Services, Inc. ("United") (collectively "Defendants")'s Motion for Summary Judgment (ECF No. 25). Plaintiffs Kenneth Anderson and Betty Anderson filed a Response (ECF No. 28) and Defendants filed a Reply (ECF N. 30).

## FACTS AND BACKGROUND

This dispute arises from Defendants refusal to reimburse Plaintiffs for medical expenses paid by Plaintiffs for Betty's artificial disc replacement surgery. Kenneth ("Ken") and Betty Anderson are a married couple. (First Amended Compl. ("FAC") ¶2, ECF No. 8.) Betty was insured through Ken's insurance with PacifiCare. (*Id.* at ¶7.)

Betty suffered from lumbar spine pain and had been symptomatic since 2002. (Betty Decl., Ex. 6 attached to Response ¶2, ECF No. 28–1.) Betty underwent a regimen of pain management with epidural and facet injections from August 2003 through September 2005. (Betty Decl. at ¶6.) On March 16, 2005, PacifiCare authorized Betty to be seen by Dr. William Smith, M.D., an orthopedic surgeon. (FAC at ¶11; Betty Decl. at

¶14.)  Betty claims that by that time she was suffering numbness down her left leg and was having difficulty walking. (Betty Decl. at ¶ 15.)

On April 5, 2005 Dr. Smith requested prior authorization from PacifiCare to perform an artificial disk replacement, using a Charite artificial disc[1], at L5-S1 on Betty. (Betty Decl. at ¶16.)  A written denial was sent by PacifiCare stating that the procedure was denied because of insufficient evidence that the artificial total disc replacement was as safe and effective as conventional treatments for lumbar disc disease. (*Id.* at ¶18; Denial Letter, April 12, 2005, Ex. 16 attached to Response, ECF No. 28–2.)

Nevertheless, Betty proceeded with the L5-SI discectomy and prosthetic disk replacement (using the Charite artificial disc) with retroperitoneal exposure on May 6, 2005 without receiving prior approval from PacifiCare. (Betty Decl. at ¶20.)  The surgery was a success. (*Id.*)  Betty resubmitted her claim to PacifiCare, and on June 21, 2005, PacifiCare denied Betty's claim because she had not received prior authorization. (*Id.* at ¶21; Denial Letter, June 21, 2005, Ex. 17 attached to Response, ECF No. 28–2.)

On or about November 18, 2005, Betty submitted a reconsideration request for payment of services provided by Dr. Smith. (Betty Decl. at ¶22; Appeal and Grievance letter, November 18, 2005, Ex. 18 attached to Response, ECF No. 28–2.)  On December 16, 2005, PacifiCare notified Betty that it had completed its review of her payment request and upheld its prior decision denying coverage as the services were rendered without preauthorization, and PacifiCare notified Betty that she had a right to bring civil action under Section 502(a) of the Employment Retirement Income Security Act. (Betty

---

[1]  The Charite artificial disc received approval from the Food and Drug Administration ("FDA") on October 26, 2004. (FAC at ¶ 10.)  The Charite artificial disc was approved for spinal arthroplasty in skeletally mature patients with degenerative disc disease at level from L4-S1 who had failed at least six months of conservative treatment. (*Id.*)  The Charite artificial disc had been available in Europe since 1987, and its use offered a medically accepted option to spinal fusion. (*Id.*).

Decl. at ¶23; Denial Letter, December 16, 2005, Ex. 19 attached to Response, ECF No. 28–2.)

The Andersons filed the instant suit on July 29, 2011. (*See* Comp., ECF No. 1.) Plaintiffs only claim one cause of action for breach of contract under ERISA and HIPPA. (*See* FAC.)  Defendants filed the instant Motion for Summary Judgment arguing that Plaintiffs failure to exhaust administrative remedies warrants dismissal of the claim and that PacifiCare reasonably and appropriately denied the claim due to Betty's failure to obtain prior authorization as required under the Plan.

## DISCUSSION

### A.   Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2)

by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B.    Analysis**

The parties dispute what standard of review should be applied in deciding a plan participant's judicial challenge of a denial of benefits.  Defendants argue that it is an abuse of discretion standard while Plaintiffs argue it is a *de novo* standard.  The parties also dispute the categorization of the requests made by Betty to get the surgery approved by PacifiCare.  Defendants argue that there are two different requests at issue, the first being the *preauthorization request* filed by Betty and her doctor before the surgery and the second being the *request for reimbursement* following the surgery.  Plaintiffs do not draw this distinction and see the denial of benefits to be in response to one request: a request for PacifiCare to authorize payment for the surgery.

### 1.    Standard of Review

When it enacted ERISA, Congress did not specify the standard of review courts should apply in deciding a plan participant's judicial challenge of a denial of benefits. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 433 U.S. 1, 24 n.26 (1983). Rather, it expected federal courts to develop a body of common law to govern those claims and to determine the appropriate standard of review. *Id.*  The Supreme Court addressed the standard of review that courts must apply in reviewing ERISA cases challenging a plan administrator's denial of benefits in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).  The Supreme Court held that because the plan administrator in ERISA plans stands in a fiduciary relationship to plan participants, courts reviewing plan decisions should apply general trust principles.  In assessing the applicable standard of review, the district courts should start with the wording of the plan itself.

If a plan grants discretionary authority to the plan administrator to construe disputed or doubtful terms in the plan and to make final benefits determinations, courts apply an abuse of discretion standard of review. *Firestone*, 489 U.S. at 115.  However,

the plan must unambiguously provide discretion to the administrator for the abuse of discretion standard to apply. *Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999) (*en banc*). "There are no 'magic' words that conjure up discretion on the part of the plan administrator." *Abatie*, 458 F.3d at 963.  The Ninth Circuit has repeatedly held that granting the power to interpret plan terms and to make final benefits determinations confers discretion on the plan administrator. *Id. See also, Bergt v. Ret. Plan for Pilots Employed by MarkAir Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002); *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001).  ERISA plans which do not grant any power to construe the terms of the plan are insufficient to confer discretionary authority on the plan administrator. *Abatie*, 458 F.3d at 964.  For example, in *Ingram v. Martin Marietta Long Term Disability Income Plan*, the Ninth Circuit concluded that a provision in an ERISA plan that merely identified the plan administrator's tasks, but bestowed no power to interpret the plan, did not confer discretionary authority on the administrator.  244 F.3d 1109, 1112-13 (9th Cir. 2001).

If the terms of the plan do not confer discretionary authority on the plan administrator, courts reviewing a plan administrator's decision denying benefits apply a *de novo* standard of review. *Id.* at 1113.  *De novo* is the default standard of review. *Firestone*, 489 U.S. at 115.  "If *de novo* review applies, no further preliminary analytical steps are required.  The court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie*, 958 F.3d at 963.

Defendants and Plaintiffs turn to the PacifiCare of Nevada, Inc. document entitled 2005 Evidence of Coverage ("EOC") to support their arguments. (*See* EOC, Ex. 26 attached to Response, ECF No. 28–3.)  "Section Eight — Overseeing Your Health Care" states: "This section explains how PacifiCare authorized or makes changes to your health

care services, how we evaluate new health care technologies and how we reach decision about your coverage." (*Id.*)  Immediately thereafter, the EOC includes a subsection titled "How PacifiCare Makes Important Health Care Decisions." (*Id.*)  Therein, PacifiCare explains how it and its independent contractors "have established processes to review, approve, modify, or deny, based on Medical Necessity, requests by Providers for Preauthorization of the provision of health care services to Members based on Medical Necessity." (*Id.*)  The rest of the section identifies these processes and how individual decisions by PacifiCare to "review, approve, modify, or deny" are made. (*See id.*)

Defendants argue that the Plan unambiguously grants PacifiCare, the plan administrator, the authority and discretion to interpret the Plan's terms and to make final benefits determinations.  However, the Court disagrees.  While there are no "magic words" required, the cited section of the EOC never mentions any power of the plan administrator to interpret the terms of the plan.  A comparison to the cases that found the plan clearly conveys discretion versus the plans that did not unambiguously grant discretionary authority shows that PacifiCare's language is more similar to the plans which have been found not to grant discretionary authority.  For example in *Abatie*, the court found that the plan gave the administrator the responsibility to interpret the terms of the plan and to determine eligibility for benefits. 458 F.3d at 965.  The plan in *Abatie* went further by giving the administrator "full and final" authority and cautioned that this authority "rests exclusively" with the plan administrator. *Id.*  By contrast, the court in *Ingram* found that the language "[a]ccordingly, the management and control of the operation and administration of claim procedures under the Plan, including the review and payment or denial of claims and the provision of full and fair review of claim denial pursuant to Section 503 of the Act, shall be vested in the carrier" was not sufficient to grant unambiguous discretion to the plan administrator. 244 F.3d at 1113.  The *Ingram*

court further instructed that it is "easy enough" to include language that would unambiguously confer discretion. *Id.* at 1114.  The language of the PacifiCare plan is more similar to the broader language in the *Ingram* case then the clear and unambiguous language of the *Abatie* case.  Accordingly, the Court finds that the *de novo* standard applies to PacifiCare's denial of benefits.

### 2.    Authorization Requests

Defendants argue that Plaintiffs authorization requests should be split into two categories: (1) preauthorization request and (2) reimbursement request.  Splitting the requests into two categories allows Defendants to argue that Plaintiffs are barred from bringing suit over the preauthorization request because they failed to exhaust administrative remedies.  Defendants' argument appears to be that since Plaintiffs did not appeal the denial before Betty went forward with surgery, she basically forever waived her right to appeal that determination which was that the particular treatment was not covered because there was insufficient evidence to conclude that the procedure is safe and effective.  Instead, since Betty went forward with the surgery without preauthorization, the denial of coverage could then simply be based on Betty's failure to follow the plan guidelines and procedures.  Accordingly, any appeal based on the fact that Betty did not obtain pre-authorization would not have to comply with the provisions of CFR 2560.503-1(h)(3)(iii).  The Court's *de novo* review of the contract at issue and PacifiCare's denials confirms Defendants' arguments.

Plaintiffs argue that Defendants are incorrect because Plaintiffs timely filed an appeal.  Plaintiffs argue that EOC or the denial letter do not state that the appeal needs to be filed before claimant pays for their own surgery and then seeks reimbursement.  However, under Section Five – Your Medical Benefits, a general exclusion applies to services not rendered without preauthorization.  It states:

**Services that are rendered without Preauthorization** from both the Member's Contracted IPA and PacifiCare (except for Emergency Services or Urgently Needed Services) described in this *Evidence of Coverage*, and for obstetrical and gynecological Physician services obtained directly from an OB/GYN, family practices Physician or surgeon designated by the Member's Contracted IPA as providing OB/GYN services, **are not covered**. (bold added)

(EOC, p. 6.)

This provision constitutes an independent basis to deny coverage. Furthermore, this provision would be rendered meaningless if a 'service' that is initially denied preauthorization can be performed before the appeals process is initiated and the insured can always still be reimbursed simply by filing an appeal or claim for reimbursement.. There would be no point to having a precondition which requires preauthorization prior to obtaining treatment. Although the parties do not argue this point, it should be noted that the preauthorization provision is not unconscionable as it does allow for exceptions, namely for emergency and urgently needed services. Thus, the Court upon *de novo* review of the EOC, finds that it was reasonable for Defendant to deny the Plaintiffs' request for reimbursement under the instant scenario pursuant to the section of the EOC stated above.

PacifiCare's response to Plaintiffs' request for payment (appeal or reimbursement request) on June 21, 2005 stated:

When you enrolled in a HMO Plan, you selected a Primary Care Physician to coordinate/authorize your medical care. The services received were not authorized and are not payable by PacifiCare.

(Denial Letter, June 21, 2005.)  Plaintiffs argue that his response was inaccurate because Betty did receive the approval of her Primary Care Physician.  The Court agrees that the explanation is incomplete and does not accurately specify the provision from the EOC which allows PacifiCare to deny the reimbursement request.  However, this failure was properly remedied when PacifiCare responded to Plaintiffs reconsideration request.  PacifiCare's subsequent denial, dated December 16, 2005, recites the correct provision from the Plan (quoted above) explaining that services must have received preauthorization from "both the Member's Contracted IPA and PacifiCare" otherwise, they are not covered. (Denial Letter, December 16, 2005.)

Plaintiffs' remaining arguments as to why summary judgment should not be granted are flawed.[2]  Regarding the preauthorization provision's exception for urgently needed services, Plaintiffs argue that Betty's surgery was urgently needed because she was soon to be relegated to a wheelchair.  However, the only evidence of Betty's need to be confined to a wheelchair is her own self-serving sworn affidavit.  There is not a single medical record or medical opinion demonstrating that Betty would end up in a wheelchair if she did not have the surgery soon.  "[U]ncorroborated  and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

Furthermore, the EOC defines  "urgently needed services"  and Plaintiffs fail to explain how Betty's condition qualified under that definition.  In order for Plaintiffs to successfully argue that the denial of benefits was improper they must show that the preauthorization provision does not apply because it was an urgently needed service.  Instead, Plaintiffs argue that the onus should have been put on PacifiCare to determine if

---

[2] The Court notes that while the parties cite many points of authorities for the Court to consider in making its determination regarding which standard of review should apply, they scarcely cite to any authority when it comes to reviewing the contract and whether a breach of contract occurred based on the medical authorization denials.

the surgery was urgently needed when it made its determination.  This is not logical because preauthorization is not even required if it is an urgently needed service.

Plaintiffs make a blanket argument that Defendants are in breach of contract by not inviting the Plaintiffs to submit to its review panel any information or documentation supportive of their position, by failing to bring in a medical professional familiar with artificial discs as part of its review and by failing to provide the Plaintiffs of their attorney with requested documentation.  Plaintiffs claim that the EOC language it cited on pages 13-14 of their Response provides that Defendants had an obligation to do these things.  The Court has reviewed these passages and does not identify where Plaintiffs' believe these obligations arose.  Plaintiffs provide absolutely no analysis for the Court to follow to determine whether or not PacifiCare could possibly be in breach of those provisions.  Accordingly, Plaintiffs have failed to persuade this Court that PacifiCare is in breach of contract for any of the reasons Plaintiffs cite.

Finally, Plaintiffs argue that Defendants failed to provide a health care professional consultation in violation of CRF 2560.503-1(h)(3)(iii) which provides as follows:

(h) Appeal of adverse benefit determinations.

(3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures–

(iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care

professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

CRF 2560.503-1(h)(3)(iii).  However, this provision only applies to appeals of adverse benefit determinations that are based on medical judgment.  Plaintiffs argue that they were effectively denied any meaningful review; however, Plaintiffs procedurally waived this stage of review by choosing to undergo the medical procedure before it received preauthorization.

Plaintiffs' final arguments regard inconsistencies among the denial letters and PacifiCare's recordkeeping.  Nevertheless, Plaintiffs fail to cite any part of the EOC that PacifiCare breached.  It is impossible for the Court to determine a breach of contract issue without the applicable language.

The Court fully appreciates the hardship incurred by Plaintiffs in the instant scenario.  However, as a matter of law, the Court cannot allow this consideration to influence its decision.  Accordingly, PacifiCare's Motion for Summary Judgment is GRANTED.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants PacifiCare of Nevada, Inc. and United HealthCare Services, Inc.'s Motion for Summary Judgment (ECF No. 25) is GRANTED.

DATED this ____5____ day of April, 2012.

_____
Gloria M. Navarro
United States District Judge